UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID ALAN SMITH,

    Petitioner,

vs.

Lieutenant DEREK TAYLOR, Camp Commander,

    Respondent.
                               /

No. C 05-4528 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

Petitioner was charged in Sonoma County Superior Court with seven counts of felony robbery in violation of section 211 of the California Penal Code, along with an allegation that each count constituted a serious and violent felony within the meaning of Penal Code sections 1192.7(c) and 667.5(c), respectively. Ans. Ex. A at 23-24. Pursuant to a plea agreement, petitioner waived his right to a court and jury trial and pleaded guilty to four counts of second degree robbery (counts I-IV) in exchange for the dismissal of three counts of second degree robbery (counts V-VII) and a maximum confinement time of eight years in state prison. *Id.* at 31-34. Petitioner also entered a special waiver, known in California as a "*Harvey* Waiver," which would allow the trial court to consider the dismissed

counts V-VII for the purposes of sentencing. *Id.* at 38; s*ee People v. Harvey,* 25 Cal.3d 754 (1979).

At the sentencing hearing, the court denied both petitioner's motion requesting probation and his request for the mitigated state prison term. Ans. Ex. B J&ST[1] at 29. Instead, the court imposed the upper term for count I (five years) and consecutive terms for counts II-IV, calculated at one-third the midterm (three years), for a total of eight years in state prison. *Id.* at 29-30. In reaching its decision to impose the aggravated term for count I, the court made the following comments:

> The court is going to deny probation here. . . . I'll commit [petitioner] to the director of the Department of Corrections for a term of eight years. . . . I thought about this a lot and it's the totality of the criminality here that's being sentenced. The crimes involved were cruel and callous. They're based upon the repeated threats to shoot or kill the tellers and the use of profanities. The manner in which the crimes were carried out did, although there's been argument on this point, I did find that they did indicate some sophistication in that he used sun glasses, different hats, I guess shaved his mustache for a while, shaved his hair, and then his hair was growing back. The defendant has engaged in violent conduct, serious danger to society. With respect to the factors in mitigation, I do note, because as I've said before that he performed satisfactorily in drug court down in Orange [C]ounty, but certainly the balance goes toward aggravation.

*Id.* The court also imposed various restitution fines and ordered petitioner to submit blood and saliva samples pursuant to Penal Code section 296. *Id.* at 30-31.

Petitioner appealed his sentence; the only issue he raised was that the court erred in requiring him to provide a DNA sample. *Id.* Ex. C. The California Court of Appeal issued an opinion upholding the conviction but modifying the order that required petitioner to provide a DNA sample. *Id.* Ex. F. Petitioner then filed a petition for review in the California Supreme Court. *Id.* Ex. G. In that petition, he noted that after the Court of Appeal had issued its decision, the Supreme Court of the United States decided *Blakely v. Washington*, 542 U.S. 296 (2004). *Id.* He contended that the sentencing court violated *Blakely* by imposing the upper term without first submitting the aggravating factors to a jury to determine whether those factors were true beyond a reasonable doubt. *Id.* The California

---

[1] J&ST refers to the Judgment and Sentencing Transcripts from February 14, 18, and 19, 2003, which are part of exhibit B.

2

Supreme Court denied the petition "without prejudice to any relief to which defendant might be entitled after this court determines in *People v. Black*, S126182 and *People v. Towne*, S125677, the effect of *Blakely v.* Washington (2004) __ U.S. __ S.Ct. 2531, on California law." *Id.* Ex. H.

Petitioner then filed this federal habeas petition, alleging that the sentencing court violated his Sixth Amendment right to a jury trial by imposing the upper term for second degree robbery based upon aggravating factors determined by the judge, rather than a jury. Pet. at 6. This court dismissed the petition on initial review, but the United States Court of Appeals for the Ninth Circuit reversed and remanded the dismissal. Because petitioner's sole claim concerns the constitutionality of his sentence, a description of the crimes petitioner committed is not necessary.

**DISCUSSION**

**I.    Exhaustion**

A petitioner who is in state custody and wishes to challenge his conviction collaterally by a petition for writ of habeas corpus must exhaust state judicial remedies or show that there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). To exhaust state judicial remedies, the petitioner must present the highest state court available with a full and fair opportunity to rule on the merits of each claim before presenting such claim to federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Picard v. Connor,* 404 U.S. 270, 275 (1971). Repeated assertions of the claim are not necessary to satisfy the exhaustion requirement so long as the state's highest court actually considers the federal claim at least once on the merits. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Greene v. Lambert*, 288 F.3d 1081, 1086-87 (9th Cir. 2002).

A federal court will find that the highest state court had a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. *See Gray v. Netherland*, 518 U.S.152, 162-63 (1996). Vague references

3

to broad constitutional principles such as due process, equal protection, or a fair trial do not satisfy the exhaustion requirement. *Id.* at 162. Rather, a petitioner must include reference to a specific federal constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief. *Id.* at 162-63. Moreover, "mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366. In order for the federal court to entertain the petition, the petitioner must have presented the claims to the state's highest court based upon the same federal legal theory and factual basis as that the petitioner subsequently relies upon in the federal habeas petition. *See id.*

Respondent asserts that petitioner has not exhausted his federal claim because petitioner has an "available [s]tate corrective process," and therefore, that this court should dismiss petitioner's habeas petition. Ans. at 4. Contrary to respondent's assertion, however, petitioner has satisfied the exhaustion requirement. Although the California Supreme Court dismissed petitioner's petition for review without prejudice, enabling petitioner to go back to state court to argue his claim, that does not necessarily mean that petitioner has not satisfied the exhaustion requirement; to satisfy the exhaustion requirement, petitioner need only fairly present his federal claim once to the state's highest court. *See* 28 U.S.C. § 2254(b)(1).

In his direct appeal, petitioner presented to the California Supreme Court his claim that the sentencing judge denied him his Sixth Amendment right to a trial by jury by imposing an upper term sentence based upon the judge's determination of aggravating factors. Ans. Ex. G. Petitioner referred to a specific federal constitutional guarantee and included a statement of the facts that entitles him to relief. *Id.* As such, the highest state court had a full and fair opportunity to rule on the merits of petitioner's claim. Therefore, petitioner has exhausted his claim in state court. See *Castille*, 489 U.S. at 350.

## II.   Standard of Review

A district court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

4

2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996, a district court may not grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams*, 529 U.S. at 407-09, while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

     A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-406. An "unreasonable application" of federal law occurs "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

     In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the "last reasoned decision" of the highest state court to address the merits of the petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Here, the highest state court to address the merits of petitioner's claim was

the California Supreme Court. For the reasons stated below, the state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor was the state court decision based on an unreasonable determination of the facts.

## III. California's Determinate Sentencing Law ("DSL")

California's Determinate Sentencing Law ("DSL") specifies three terms of imprisonment for most offenses. *See* Cal. Penal Code § 1170(b). The statute defining the offense generally prescribes an upper term, a middle term, and a lower term. *Cunningham v. California*, 549 U.S. 270, 277 (2007); *see, e.g.*, Cal. Penal Code § 213. At the time of petitioner's offense, California's DSL required a sentencing court to impose the middle term "unless there [were] circumstances in aggravation or mitigation of the crime." Cal. Penal Code § 1170(b). The court may determine the existence of such circumstances by examining the trial record, the probation officer's report, statements regarding aggravation or mitigation submitted by the parties or by the victim or victim's family, and other evidence introduced at the sentencing hearing. *Id.*

## IV. *Blakely* Error

Petitioner claims that the sentencing court violated his Sixth Amendment right by imposing the upper term sentence based on aggravating factors that were not admitted by petitioner or proved to a jury beyond a reasonable doubt.

The Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000). The Supreme Court has explained that "the statutory maximum for *Apprendi* purposes is the maximum sentence judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004). Put differently, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings." *Id.* at 303-04 (emphasis

6

supplied). In *Cunningham*, the Supreme Court held that the "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum" that could be imposed, absent additional findings of fact by the jury. 549 U.S. at 288. Thus, pursuant to *Apprendi* and *Blakely*, the Sixth Amendment forbids the imposition of an upper term sentence under California's DSL unless aggravating circumstances are admitted by the defendant or proved to a jury beyond a reasonable doubt.

Under California law, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008); *People v. Black* ("*Black II")*, 41 Cal. 4th 799, 813 (2007); *People v. Osband*, 13 Cal. 4th 622, 728 (1996). That is, only one aggravating factor is necessary to set the upper term as the "statutory maximum" for *Apprendi* and *Blakely* purposes as long as it is established in accordance with the constitutional requirements set forth in *Blakely*. *Black II*, 41 Cal. 4th at 815. While the court may make factual findings with respect to additional aggravating circumstances, these findings, themselves, do not further raise the authorized sentence beyond the upper term. *Id.* Furthermore, with respect to a Sixth Amendment sentencing violation, "the relevant question is not what the trial court *would* have done, but what it legally *could* have done." *Butler*, 528 F.3d at 648 (emphasis in original); *Black II*, 41 Cal. 4th at 815 ("The issue to be determined in each case is whether the trial court's fact finding increased the sentence that otherwise *could* have been imposed, not whether it raised the sentence above that which otherwise *would* have been imposed") (emphasis in original). After validly finding one aggravating factor, a trial court legally *could* impose an upper term sentence. That the judge might not have imposed an upper term sentence in the absence of additional aggravating factors does not implicate the Sixth Amendment. *Butler*, 528 F.3d at 649. Accordingly, petitioner's upper term sentence is not unconstitutional if at least one of the aggravating factors that the judge relied upon in sentencing petitioner was established in a manner consistent with the Sixth Amendment.

Although the Supreme Court of the United States had not yet decided *Cunningham v. California* when petitioner's sentence became final, the rule established in *Cunningham*

7

applies to petitioner's case notwithstanding *Teague v. Lane*, 489 U.S. 299, 310 (1989) (holding that new constitutional rules of criminal procedure are not applicable on collateral review except in narrow circumstances). In *Butler v. Curry*, the Ninth Circuit determined that *Cunningham* did not announce a new constitutional rule for *Teague* purposes. 528 F.3d 624, 636 (9th Cir. 2008) (holding that because *Cunningham* "simply applied the rule of *Blakely* to a distinct but closely analogous state sentencing scheme," it did not add "any new elements or criteria for" determining when a state statute violates the Sixth Amendment). Thus, because *Cunningham* did not announce a new constitutional rule, *Teague* does not bar its application here on collateral review. Under *Blakely* and *Cunningham*, therefore, a sentencing judge could only impose an upper term sentence based on aggravating facts found by the jury or admitted by petitioner.

Here, at the sentencing hearing, the trial judge sentenced petitioner to the upper term for second degree robbery based on three aggravating factors: (1) the crimes involved cruel and callous acts, (2) the manner in which petitioner carried out the crimes indicated planning, sophistication, or professionalism, and (3) petitioner engaged in violent conduct that indicates a serious danger to society. Ans. Ex. B J&ST at 30. Specifically, the judge found that the crimes involved were "cruel and callous" because petitioner repeatedly used profanities and threatened "to shoot or kill the tellers," that "the manner in which the crimes were carried out" indicated "some sophistication in that [petitioner] used sun glasses, different hats, . . . shaved his mustache for a while, shaved his hair, and then [let] his hair . . . grow[] back," and that petitioner had "engaged in violent conduct" indicating a "serious danger to society." *Id.* at 29. The sentencing judge noted that with respect to mitigation, petitioner "performed satisfactorily in drug court" but ultimately found that "certainly the balance goes toward aggravation." *Id.* at 29-30.

The record indicates that the trial judge did not submit the three aggravating factors to a jury to determine whether they were true beyond a reasonable doubt. Rather, the trial judge found the circumstances in aggravation based on his own determination of the facts. As such, the relevant "statutory maximum" for *Apprendi* purposes was the middle term

8

(three years) prescribed in California's statutes, not the upper term (five years). Without an admission by petitioner as to the aggravating circumstances, or a similar jury finding based upon evidence satisfying the constitutional, beyond-a-reasonable-doubt standard, petitioner could not receive a sentence based on anything other than the middle term. Therefore, because the sentencing court raised petitioner's maximum possible term beyond the "statutory maximum" based on aggravating factors neither admitted by petitioner nor found by a jury, the sentencing court violated petitioner's Sixth Amendment right to a jury trial under *Apprendi* and *Blakely*. Consequently, by denying petitioner's petition for review and failing to recognize that petitioner's Sixth Amendment right had been violated under *Blakely*, the state court's decision amounted to an unreasonable application of federal law.

In its answer, respondent asserts two main reasons why the state court's decision was not an unreasonable application of *Blakely*. For the reasons stated below, this court disagrees with both of respondent's arguments.

First, respondent argues that by entering a plea agreement that informed petitioner that the maximum sentence he could receive was eight years, petitioner expressly agreed to allow the court (1) to impose an eight year sentence, which necessarily included an upper term, and (2) to determine whether there was an adequate factual basis for the upper term. Ans. P&As at 6-7. In *Blakely*, the defendant pleaded guilty to a crime punishable by a term of not more than ten years. *Blakely*, 542 U.S. at 298. Other provisions of applicable state law, however, mandated a "standard" sentence of forty-nine to fifty-three months, unless the judge found aggravating facts justifying an exceptional sentence. *Id.* at 299. When the trial court found that the defendant acted with "deliberate cruelty," it imposed a ninety-month sentence, thirty-seven months beyond the standard maximum. *Id.* at 303. Applying the rule of *Apprendi*, the Supreme Court held the sentence unconstitutional, in violation of the Sixth Amendment. *Id.* at 305. The Court rejected the argument there was no *Apprendi* violation since the defendant's sentence was less than the ten year sentence authorized under state law. *Id.* at 303. The Court explained "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of*

9

*the facts reflected in the jury verdict or admitted by the defendant." Id.* (emphasis supplied). Thus, without an admission by the defendant that he acted with "deliberate cruelty," or a similar jury finding based upon evidence satisfying the constitutional, beyond-a-reasonable-doubt standard, the defendant in *Blakely* could not receive a sentence of more than fifty-three months in prison.

Like the defendant in *Blakely*, petitioner also entered a plea of guilty, with the understanding that such crimes were punishable by a maximum term as provided by statute. Just as the statutory sentencing scheme at issue in *Blakely* mandated that the judge impose a "standard" sentence unless the judge found aggravating facts justifying an exceptional sentence, California's DSL also required the sentencing court to start with the middle term sentence, and to move from that term only when the court itself found facts—whether related to the offense or the offender—beyond the elements of the charged offense. *Cunningham*, 549 U.S. at 279. That petitioner and the defendant in *Blakely* were aware that they could receive a sentence that included an aggravated term does not mean that both consented to a court imposing such a sentence unconstitutionally.

Moreover, by entering into a plea of guilty and thereby waiving his Sixth Amendment right to a jury trial on the substantive offenses, petitioner did not also waive his Sixth Amendment right to a jury trial on aggravating sentencing factors. *See Blakely*, 542 U.S. at 310 ("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. . . . If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty."); *People v. French*, 43 Cal. 4th 36, 48 (2008) (finding that although defendant "expressly waived his right to a jury trial on the substantive offenses [by entering a plea of no contest], . . . this waiver did not encompass his right to a jury trial on any aggravating circumstances"). Thus, even though petitioner entered a plea agreement that informed petitioner that he could receive the maximum sentence of eight years, petitioner did not expressly agree to allow the court to impose the upper term sentence in violation of his Sixth Amendment

10

right.

Second, respondent asserts that by entering a plea of guilty to four counts of second degree bank robbery, petitioner also implicitly admitted that the manner in which he carried out the crime indicated "planning, sophistication or professionalism," or that the "crime involved threat of great bodily harm," or that he had "engaged in violent conduct that indicates a serious danger to society." Pursuant to his plea agreement, petitioner pleaded guilty to four counts of second degree robbery in violation of California Penal Code section 211, nothing more. Ans. Ex. A at 31. Contrary to respondent's assertion, when petitioner entered into the plea agreement, he only admitted to the substantive elements of the offense of second degree robbery; petitioner did not implicitly admit to the manner in which he carried out the robberies. *French*, 43 Cal. 4th at 48 (holding that "by entering into a plea agreement that included the upper term as the maximum sentence, [defendant] did not implicitly admit that his conduct could support that term"); *see also Blakely*, 542 U.S. at 303-04.

In summary, this court concludes that the sentencing judge violated petitioner's Sixth Amendment right to a jury trial by raising petitioner's maximum possible term based on facts, other than a prior conviction, that were neither admitted by petitioner nor proved to a jury beyond a reasonable doubt. However, for the reasons stated below, this court finds that the error was harmless.

**V.    Harmless Error**

Any *Apprendi* or *Blakely* sentencing error is subject to a harmless error analysis as set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Washington v. Recuenco*, 548 U.S. 212, 221-22 (2006) (holding that the harmless error analysis applies to a claim of Sixth Amendment *Blakely* error derived from failure to submit a sentencing factor to a jury). Petitioner is entitled to habeas relief only if the sentencing error in his case is not harmless.

Applying *Brecht*, a court must determine whether "the error had a substantial and injurious effect" on petitioner's sentence. *Hoffman v. Arave,* 236 F.3d 523, 540 (9th Cir. 2001) (internal quotation marks omitted). Under that standard, this court must grant

11

petitioner habeas relief if there is "'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." *Butler*, 528 F.3d at 648 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). It is well established that "[g]rave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Id.* at 648 (quoting *O'Neal*, 513 U.S. at 435). While this court cannot "consider new admissions made at sentencing in [a] harmless error inquiry," this court may consider evidence presented at the sentencing proceeding "insofar as [it] would help . . . adduce what other evidence might have been produced at trial, had the question been properly put before the jury." *United States v. Salazar-Lopez*, 506 F.3d 748, 755 (9th Cir. 2007).

Applying these legal principles to petitioner's case, this court concludes that the error was harmless. First, the record indicates that petitioner threatened the victims by telling them that he would "blow [the victim's] head off" if they did not comply with his demands for money. Ans. Ex. B J&ST at 29; Ex. A1 at 24-26. In addition, the victims submitted statements expressing that they are now uncomfortable at work because they fear being robbed again. *Id.* Ex. A1 at 36-37. These facts support the sentencing judge's conclusion that petitioner carried out the crimes in a cruel and callous manner.

Second, there is evidence in the record that shows that petitioner committed the crimes in a manner that indicates some "planning, sophistication, or professionalism; petitioner knew detailed information about robbing banks prior to committing the crimes and he altered his appearance during the commission of the crimes. *Id.* at 27-28. During the sentencing hearing, petitioner and his counsel denied that he had planned any of the robberies; rather, he blamed the crimes on his drug addiction. *Id.* Ex. B J&ST at 28. However, in the probation report, petitioner acknowledged that he wore "baseball hats and sunglasses in order to disguise his appearance" and conceded that he had met an individual who had robbed twenty banks successfully and who had told petitioner how he had robbed the banks in detail. *Id.* Ex. A1 at 27-28. Because these concessions were not "new admissions made at sentencing," this court may consider such evidence in a

12

harmless error analysis. See *Salazar-Lopez*, 506 F.3d at 755.

In addition, not only does the record show that petitioner used forceful language with the victims because he had been told that he needed to use such language to accomplish the robberies, but it also shows that petitioner knew to warn the victims not to give him "dye packs." *Id.* at 25, 28. Furthermore, petitioner did not just walk into a bank on the spur of the moment and commit only one robbery; rather, petitioner committed six additional robberies patterned after the first successful robbery.[2] Certainly, the circumstances of these crimes showed "planning, sophistication, or professionalism" by petitioner. California Rules of Court, Rule 4.421. Based on the record, this court cannot conclude that there is "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. Accordingly, the *Blakely* violation was harmless, and petitioner is not entitled to relief on his claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 23, 2010.

PHYLLIS J. HAMILTON
United States District Judge

---

[2] Petitioner entered a "*Harvey* Waiver," which allows the trial court to consider the dismissed counts V-VII for the purposes of sentencing.